WILLIAM PHELPS, Administrator, etc.,

*v.*

ROBERT M. FUNKHOUSER *et al.*

1. ADMINISTRATOR—*general powers of.* An administrator has the power to apply for an order of court to sell the real estate of the intestate, but he has no power to involve the estate in litigation, under a pretense of removing an incumbrance, with a view to a better price when it shall be offered for sale. He must take the estate as he finds it, and, if incumbered, sell subject to such incumbrance.

2. PARTIES — *who may bring suit to remove cloud from estate of ·an intestate* Under our statute, the estate, both real and personal, of an intestate descends to his children, if any, or to his heirs, whoever they may be, and they alone, as such representatives, have power to bring suits regarding the title to land, to remove a cloud, or any incumbrance upon it.

3. ADMINISTRATOR — *power respecting lands.* The estate of an intestate, being under the full power and control of the heirs, an administrator has no power, nor is he bound, to protect the realty in any manner, not even to the extent of paying the taxes assessed against it. The cases of *Walbridge* v. *Day et al.*, 31 Ill. 379; *Smith et al.* v. *McConnel et al.*, 17 id. 135, and *Stone et al.* v. *Wood*, 15 id. 177, discussed and affirmed.

4. SAME — *how to remove an incumbrance upon land, when the administrator has obtained an order of sale.* If it is desirable for the administrator to expose the lands of his intestate, which are incumbered by mortgage, to sale for the payment of debts, the course to pursue is for the administrator to obtain an order to sell it, and to prevent the anticipated sacrifice, the heir may enjoin the sale until he can make an effort to set aside the mortgage.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. JOHN S. BAILEY, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. ROSS & WINTER, for the plaintiff in error.

Messrs. JUDD & JAMES, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery in the Circuit Court of Fulton county brought by William Phelps, as administrator on the estate of Edward Stapleford, deceased, against Robert M. Funkhouser, Russell F. Lamb and Leonard G. Quinlin, as partners under the firm name of R. M. Funkhouser & Co., to set aside a mortgage to secure the payment of certain notes amounting to six thousand dollars, executed by Stapleford to the defendants. The mortgage was upon certain lots in the town of Vermont, on which Stapleford resided at the time of his death. It and the notes bore date June 11, 1859, and were on time at ten per cent. interest.

The alleged ground for setting this mortgage aside is, that Stapleford, at the time he executed it, and for some time previous, was of unsound mind and memory, and wholly incapacitated, by reason thereof, to transact business, and so continued up to the twelfth day of July, 1857, when he committed suicide by hanging himself.

The bill alleges the personal property is insufficient to pay the claims proved against the estate, and that there is no other real estate except that conveyed by this mortgage, and that it is necessary, to pay the debts, that it should be sold, but that it will not bring its value unless the mortgage is set aside, the mortgage being an incumbrance upon it to about its full value.

The prayer of the bill is, that the mortgage be set aside, and declared null and void, and that the notes may be delivered up to be canceled, and for general relief.

The defendants answered the bill, denying all its material allegations as to unsound mind and memory. A replication was put in, and the cause referred to the master in chancery to take testimony and report. The master reported the evidence did not sustain the allegations of the bill, to which complainant excepted. The court disallowed the exceptions and dismissed the bill. To reverse this decree the complainant prosecutes this writ of error, and assigns various errors, all which question the propriety of this decree. The plaintiff in error insists that the fact of unsoundness of mind was abundantly established by the proof, and the court should have so found the fact.

Before discussing this question, we are met by another raised by the defendants in error, which, if it be decided in their favor disposes of this case, and it is this: Has this administrator any right to exhibit this bill for the purposes indicated in it? The answer to this question is found in our statute, and in several decisions of this court, in cases arising under it.

Chapter one hundred and nine, title " Wills," by the sixty-eighth section, prescribes the form of the bond to be given by an administrator, the condition of which has reference alone to his duties in regard to the personal estate of his intestate, which he is to dispose of and render an account thereof.

By section eighty-nine, an administrator is required, in addition to the inventory and bill of appraisement of the personal property, to make a further inventory of his titles to estates, both real and personal, as well equitable as legal, specifying the kind, quantity, quality, situation and value of the real estate, by what title held, and from whom purchased, if known.

By section one hundred and three, whenever an administrator shall discover or suspect that the personal estate is insufficient to pay the debts, he shall make a just and true account of the debts, and present his petition to the Circuit Court, in which he shall state of what real estate his intestate died seised, and request the aid of the court in the premises, which aid, on proper proofs being made, is extended by the court in the form of an order to sell the real estate, or so much of it as may be necessary to pay the debts.

By section one hundred and ten, the moneys arising from such sale shall be received by the administrator, and are considered as assets in his hands for the payment of debts, and to be applied in the same manner as assets arising from the sale of personal property.

By section one hundred and twenty-five, it is provided, where the title is incomplete to real estate, the court, on proper proofs, may order its sale.

Sections one hundred and eleven, one hundred and twelve and one hundred and thirteen, which authorized an interference by the administrator, with inchoate titles to land, are now obsolete, and have been for many years.

Section one hundred and thirty-four authorizes executors and guardians to lease or mortgage the real estate, an order first being obtained from the Probate Court.

Section one hundred and fourteen authorizes the Court of Probate to coerce an administrator or executor to make immediate application to the Circuit Court for the sale of the real estate, in all cases of insufficiency of personal assets. Scates' Comp. 1191 to 1213.

By section one hundred and thirty-three, it is provided, if a mortgagee of lands shall die, leaving minor heirs, his executors

or administrators are authorized, on receiving the amount due the estate of the deceased mortgagee, to release to the mortgagor the legal title of the mortgaged premises, and such deed of release is declared valid. Rev. Stat. 1845, p. 563.

These are all the provisions of our statute giving to an administrator any power or right to intermeddle with the real estate of the intestate, or exercise any control whatever over it for any purpose.

He has power, having inventoried the real estate of the intestate, whether legal or equitable, to apply for an order to sell it, but it has not been granted him to try experiments and involve the estate in protracted and expensive litigation, under the pretext of removing an incumbrance on the estate, with a view to a better price when he shall offer it for sale under an order of the court. He must take the estate as he finds it, and, if incumbered, his plain duty is to sell it subject to the incumbrance. By so doing, he discharges his whole duty, and for the consequences, he himself acting fairly and according to law, is in no wise responsible.

By section forty-six of this same chapter the estate, both real and personal, of an intestate, descends to his children if he has any, or to his heirs whoever they may be. They alone, as representatives of the deceased, can bring suits regarding the title to land—can remove a cloud, or any incumbrance upon it, by taking the proper steps. They alone have full power and control over it. *Walbridge* v. *Day et al.*, 31 Ill. 379.

As was said by this court, in the case of *Smith et al.* v. *McConnel et al.*, 17 Ill. 135, the lands of one dying intestate descend to the heir, and, although it is subject to the payment of debts, and may afterward be divested by decree and sale of the administrator, the heir is nevertheless owner, and entitled to the rents and profits in the mean time. The administrator therefore takes neither estate, title nor interest in the realty—he takes simply a power, and nothing more. As the court in that case said, we say in this—no argument supported by analogy to settled principles, and no authority or decision has been shown which would enable an administrator to support any possessory

or real action in law or equity, for the recovery or maintenance of possession or title, or to clear up and vindicate title beclouded by adverse or pretended claims. The court concludes by saying, however beneficial to an estate such a power might be, by preventing sacrifices at sales, that an administrator's rights and powers in this respect were no broader than his duties, and they were limited to the sale of the title and estate of the intestate, and the due administration of the proceeds. Id. 142.

The power to interfere to remove a supposed incumbrance or cloud upon the title to real estate which an administrator may embrace in his inventory being denied him, so it has been held by this court that he has no power nor is he bound to protect the real estate in any manner, not even to the extent of paying the taxes assessed against it. The law does not authorize him to do even this, for, as to this and all else pertaining to the realty, it is in all and every respect under the control of the heir. *Stone et al.* v. *Wood,* 15 Ill. 177.

If it be desirable to expose this property so mortgaged, as charged in the bill of complaint, to sale, for the payment of debts, the course to pursue is clearly intimated in the case of *Smith* v. *McConnel,* above cited. The administrator should obtain an order to sell it, and, to prevent the anticipated sacrifice, the heir might enjoin the sale until he could make an effort to set aside the mortgage. We see no other course, as the law now stands, which could be adopted to prevent the disastrous consequences resulting from a sale of property mortgaged to its full value, and the mortgage alleged to be invalid. We are well satisfied the administrator has no standing in this court, on the right he asserts.

Upon the other point we refrain from expressing any opinion, as the merits of the controversy may possibly be tried again, in the name of a proper complainant, in some form. If so, we would suggest the question of insanity or unsoundness of mind should be submitted to a jury.

For the reasons given, we affirm the decree dismissing the bill.

*Decree affirmed.*