JAMES A. CLAPPISON, ET AL.

*vs.*

FRED J. FOLEY, ET AL.

Sagadahoc. Opinion, April 17, 1953.

*Goodspeed & Goodspeed,* for plaintiff.

*John J. Devine,*
*Berman & Berman & Wernick,* for defendant.

SITTING: *MURCHIE, C. J., MERRILL, C. J., THAXTER, FEL-
LOWS, NULTY, JJ. (WILLIAMSON, J., did not sit.)

FELLOWS, J. In this bill in equity pending in Sagadahoc
County, James A. Clappison of Bath complains against Fred
J. Foley, Margaret M. Foley, Alice F. Littlefield, Harold E.
Foley, Fred Foley, Jr., John J. Devine and Community Oil
Co., Inc., all of Portland. The original bill was brought by
James A. Clappison, Alice C. Clappison, and James A. Clap-
pison, Inc., against these same defendants, and upon de-
murrer filed by the defendants, the presiding justice sus-
tained the demurrer with the right on the part of the plain-
tiffs to amend the bill. The justice stated in his decision,
sustaining the demurrer, that it was not decided on the
claim of laches. The plaintiff, James A. Clappison moved
to amend by filing a new and amended bill as an amendment.
The justice presiding denied the motion to amend, because
"in my opinion a demurrer to the amended bill would be
sustained." The plaintiff filed exceptions.

The issue raised is stated in the bill of exceptions as fol-
lows:

"The sole issue raised by these exceptions is whether
or not, as a matter of law, the amended bill, so-
called, as amended by the addition of Paragraph
8A of the prayers for relief, is itself demurrable

> in the matter of substance and jurisdiction. If it
> is, the exceptions should be overruled. If it is not,
> the exceptions should be sustained."

An amendment which is itself demurrable, should not be allowed. *Gilbert, et al.* v. *Dodge,* 130 Me. 417; *Garmong* v. *Henderson,* 112 Me. 383; *Gray* v. *Chase,* 115 Me. 350.

In the amended bill the plaintiff, James A. Clappison, seeks to enforce rights to which he, as an individual, claims to be entitled under a contract that he made with the defendant, Fred J. Foley, who allegedly obtained said contract by fraudulent conduct. The contract was relative to the future formation of a corporation to be known as the James A. Clappison Company, the equal distribution of shares of stock between the parties in the new corporation, and the conveyance to the new company of Clappison's private business, as hereafter more fully stated. The bill asks for accountings with the defendants, and any or all of them, with a lien on the stock of James A. Clappison Company held by Foley, and other defendants, to enforce judgment. The bill further prays that the stock of Clappison Company held by Foley and the other defendants be ordered transferred to the plaintiff. The plaintiff does not seek to set aside the conveyance of his personal business which he made to the new corporation.

The allegations in the amended bill are: that the plaintiff was the individual owner on December 21, 1933 of a gasoline and oil business at Bath, which represented a good will acquired through several years, together with physical properties consisting of leases, storage tanks, pumps and other equipment; that the defendant Foley being familiar with the growth and possibilities of plaintiff's business, and, as the bill states, "fraudulently intending and craftily contriving to eventually procure all of the plaintiff's said business and its good will and all of its assets and its profits for him-

self without paying adequate compensation therefor, started his operations to that end by endeavoring to persuade and entice the plaintiff during the year 1933 to join with him in the formation of a corporation to take over all of said plaintiff's business, and in which said Foley promised that the plaintiff and he would each own and/or control a one-half interest in said business, and receive equal profits and enjoy equal rights therein."

The bill further alleges that "the plaintiff, being inexperienced and easily influenced in such matters, and not having the same business acumen as said Foley, and trusting in the apparent friendship and superior experience of said Foley, finally yielded to Foley's said importunities, and on December 21, 1933 at Foley's office in Portland, as the result thereof, the James A. Clappison, Inc., Company was organized, with an even division of stockholding rights between them."

The plaintiff Clappison, it is alleged, conveyed to the Clappison Company his profitable business, as soon as the Clappison Company was organized. That he joined with the defendant, Fred J. Foley, in organizing said corporation; that the same number of shares of stock of said corporation were issued to him and said Fred J. Foley, or their nominees; that neither Fred J. Foley, his nominees, nor any of the individual defendants ever paid any consideration for the stock of the Clappison Company standing of record in their names; and that said Fred J. Foley and said John J. Devine became directors of the Clappison Company at the time of its organization. It is less definitely alleged that the exceptant took all such action as the result of promises, or representations, made to him by the defendant, Fred J. Foley, as to the more profitable relationship which would exist in the future between the Community Oil Company, controlled by Foley, and the James A. Clappison Company.

The plaintiff further alleges that "the principal promise and inducement" offered to him by said Fred J. Foley was that by the organization of the Clappison Company, and the pooling of its orders with those of the Community Oil Company, the increase in the volume of business of the Community Oil Company would make a lower cost of products available with "allowable discounts and commissions," which Fred J. Foley and said Community Oil Company would pass along and credit to the Clappison Company, the benefits of all which would accrue to the plaintiff "as the owner of an equal interest with said Foley in said Clappison Company." It is alleged that whatever benefits may have accrued, no accounting has been made.

The defendants demurred to the original process. The demurrer admits the truth of all factual allegations which are well pleaded. Whitehouse, Equity, 357, Sec. 321; *Donna* v. *Auburn,* 148 Me. 356, 93 Atl. (2nd) 484. The causes of demurrer alleged against the original process were both general and special. There were allegations in the demurrer that a court of equity had no power, on the alleged facts, to grant the relief sought; that the bill contained no equity, and had failed to state a case remediable therein, or one within the jurisdiction of such a court; that the claims sought to be asserted were barred by laches, and by the Statute of Limitations. The sitting justice sustaining the demurrer expressly declared "I do not place my decision upon the claim of laches urged by the defendants" and made no mention of the other special causes of demurrer. The allegations show that nearly twenty years have elapsed. See *Estey* v. *Whitney,* 112 Me. 131; *Getchell* v. *Kirkby,* 113 Me. 91, relative to recission and restitution, although restitution or tender not always necessary, *Masters* v. *Van Wart,* 125 Me. 402; *Pitcher* v. *Webber,* 103 Me. 101.

There are two grounds upon which the plaintiff says the court has equity jurisdiction, viz: a "fiduciary" or "confidential" relationship by virtue of which Foley owed Clappison strict and unusual duties that he failed to observe, and "constructive" fraud in that Foley deliberately misrepresented what was to be accomplished in the future. The factual allegations, however, are not sufficient to set forth either claim.

A general allegation of fraud perpetrated by the defendant against the plaintiff is not sufficient in a bill in equity to set forth jurisdiction based on fraud. The facts constituting the fraudulent conduct must be set forth with sufficient particularity to enable the court to determine whether, if true, such facts amount in law to fraud. *Stevens* v. *Moore,* 73 Me. 559; *Merrill* v. *Washburn,* 83 Me. 189; *Semo* v. *Goudreau et al.,* 147 Me. 17.

The same principle governs the sufficiency of allegations of fiduciary or confidential relationship. A general allegation that the defendant occupied a fiduciary or confidential relationship toward the plaintiff is not a sufficient allegation thereof. The facts constituting the alleged relationship must be set forth with sufficient particularity to enable the court to determine whether, if true, such facts create a fiduciary or confidential relationship.

Measured by these standards, the factual allegations are not sufficient to sustain either claim.

The allegations are that the plaintiff was inexperienced and easily led; that the plaintiff did not possess the same business ability as the defendant Foley, and that the plaintiff trusted in the "apparent" friendship and superior experience of Foley. This but describes many business dealings. One man generally has the more ability or the more experience. One urges the other to "put in your property and I

will put in my time and experience." Often successful ventures follow, and often not. The court, however, cannot take jurisdiction in equity in such cases unless there shall be in fact an actual confidential or fiduciary relationship in the legal sense between the parties which will give rise to the legal effects flowing therefrom. Whenever such relationship exists between the parties to a deed, gift, contract, or the like, the law implies a condition of superiority held by one of the parties over the other, so that in every transaction between them, by which the superior party obtains a possible benefit, equity raises a presumption of undue influence and casts upon that party the burden of proof to show affirmatively his compliance with equitable requisites and of entire fairness on his part and freedom of the other from undue influence. *Eldridge* v. *May*, 129 Me. 112, 116. This relationship has been found to exist in cases of brothers and sisters, *Eldridge* v. *May*, 129 Me. 112, attorney and client, *Burnham* v. *Heselton*, 82 Me. 495, nurse and patient, *Gerrish* v. *Chambers*, 135 Me. 70, 189 Atl. 187, director and corporation, *Bates Shirt Co.* v. *Waite*, 130 Me. 352.

As above stated, the facts in this case set forth in the bill in equity are insufficient to show that such a relationship existed between the parties. Here the allegations show that each had been conducting a more or less successful business and that the friendship was only alleged to be "apparent." The allegations do not show a fiduciary relationship. *Sacre* v. *Sacre*, 143 Me. 80, 90, 95; *Gerrish, Exr.* v. *Chambers*, 135 Me. 70, 74; *Stanley* v. *Shaw*, 120 Me. 483. Further than this, had there been facts alleged that showed a fiduciary relationship, where are the allegations to clearly show fraud? For all that appears by the bill, Foley was a business optimist, and "shrewd salesman" and his "promises" related to what might, and to his mind would, happen in the future. See 23 Am. Jur. "Fraud," 890, Sec. 109, and relative to deceit and "salesmanship" see *Coffin* v. *Dodge*, 146

Me. 3, 76 Atl. (2nd) 541; "Dealer's talk" not actionable, *Bishop* v. *Small,* 63 Me. 12; *Prince* v. *Brackett, Shaw and Lunt,* 125 Me. 31. See also *Hutchins* v. *Hutchins,* 141 Me. 183, 191.

This bill in equity is not a bill where the Clappison corporation is seeking a remedy for damage suffered through mismanagement by its officers. It is not a bill where the plaintiff as a stockholder is seeking such remedy on behalf of the corporation. The plaintiff seeks a remedy for private personal damage, separate from his status as a stockholder in the Clappison corporation, because of promises made before any corporation was formed, and because he says these promises were broken. "Promises of performance of future acts do not constitute actionable representation." *Stewart* v. *Winter,* 133 Me. 136, 137; *Coffin* v. *Dodge,* 146 Me. 3, 76 Atl. (2nd) 541; *Long* v. *Woodman,* 58 Me. 49, 53. See 37 C. J. S. "Fraud," 231, Sec. 11.

From our study of the record, we cannot agree with the plaintiff's contentions that the allegations of fact ·in the amended bill can be fairly construed to show a fiduciary relationship of trust and confidence between the plaintiff Clappison and the defendant Foley, so that failure on the part of Foley to keep alleged promises constitute an abuse of trust and confidence. The factual allegations do not show inferiority in the one party and superiority in the other, with such a confiding relationship that equity requires one party to be afforded extraordinary and solicitous protection. We are obliged to agree with the decision of the sitting justice that the second bill should not be allowed as an amendment because it is itself demurrable.

*Exceptions overruled.*

*MURCHIE, C. J., took part in consultations but died before the writing of this opinion.